NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-871

COMMONWEALTH

vs.

EDWARD H. CAVANAUGH, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of operating a motor vehicle under the influence of intoxicating liquor (OUI).  The defendant argues on appeal that the trial judge should have either excluded a video recording of the police booking process (video) from evidence or continued the trial to allow the defendant to further prepare his defense.  The defendant also argues that there was insufficient evidence to support his conviction.  We affirm.

Background.  We summarize the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  One evening in June 2019, Randolph auxiliary officer Sean O'Connor observed fireworks coming from a gated storage facility.  Accompanied by a second auxiliary officer, O'Connor approached the gate and saw the

defendant setting off fireworks. When O'Connor told the defendant to put the fireworks away, the defendant responded, "What is your problem?" O'Connor repeated his instruction and began to walk away. When the fireworks continued, O'Connor returned to the gate and yelled, "I thought I told you to put the fireworks away." The defendant approached the gate and said, "What are you going to do about it?" and "What is your problem?" O'Connor smelled a "pretty strong" odor of alcohol coming from the defendant and called for a sector car. The defendant then walked toward a vehicle within the gated area, entered it, and drove around the storage facility toward the exit, stopping when he encountered the sector car that had just arrived.

Randolph police Officer Steven Elman got out of the sector car and spoke to the defendant. The defendant stated that he was not shooting fireworks and initially accused the two uniformed auxiliary officers of trying to sell him fireworks. He then said, "No, that wasn't them." Elman observed that the defendant's speech was "slurred" and his eyes were "red and watery." When the defendant stepped out of the vehicle at Elman's request, Elman noticed that he was "unsteady on his feet," "couldn't stand without assistance," and smelled "of an alcoholic beverage." Elman asked the defendant if he had consumed any drinks that night, and the defendant answered that

he had two beers.  The defendant agreed to take field sobriety tests, but, after he disclosed that he had sciatica in his legs and a hernia, Elman asked him only to recite the alphabet without singing.  It took the defendant three attempts to successfully complete this test.

The defendant was arrested and transported to a police station for booking.  The booking officer observed that the defendant had "glassy" eyes, emitted a "slight smell" of alcohol, "was kind of swaying back and forth," "mumbled a lot," and spoke at a slow pace.  The defendant at first told the booking officer that he had "one nip" of "Fireball" but later stated that he had two.

Discussion.  1.  Booking video.  During discovery in December 2019, the Commonwealth provided the defendant with the booking video.  In June 2021, two days before trial, a judge (not the trial judge) asked at a hearing whether the Commonwealth would be offering the video.  The Commonwealth replied that "as of now" it was not intending to do so, but that it was "possible" that the trial prosecutor, who had not yet been assigned, would decide differently.  The judge advised the parties that, in such event, any redactions to the video should be made before trial.

Later that day, the assigned trial prosecutor informed defense counsel that he would in fact be offering the video and

3

would send proposed redactions.  On the morning of trial, while the parties reported that they had agreed on the redactions, the defendant moved to exclude the video as more prejudicial than probative or, in the alternative, for a continuance.  The trial judge denied the motion, stating that the video was produced during discovery and so the defendant could not reasonably claim "surprise."

We discern no abuse of discretion in the trial judge's decision to admit the video.  It is "within the sound discretion of the trial judge" to determine whether the probative value of an item of evidence is "substantially outweighed by its prejudicial or cumulative nature."  Commonwealth v. Bonds, 445 Mass. 821, 831 (2006).  We will not disturb the judge's determination absent "palpable error."  Id.

The defendant argues that the video was unduly prejudicial because it shows him in a "jailhouse setting."  We are not persuaded.  The video, which is fairly benign, shows the defendant in a police station, not a "jailhouse setting," and the jury already knew that he was arrested.  The defendant fails to identify any other prejudicial aspect of the video. Moreover, the video was probative because it included the defendant's recorded admission to consuming "Fireball" and enabled the jury to assess the defendant's appearance and conduct.  See Commonwealth v. Moore, 480 Mass. 799, 808 (2018)

4

(evidence is relevant if it "provide[s] a link in the chain of proof bearing on an issue of consequence").

For similar reasons we reject the defendant's argument that the judge should have excluded the video as cumulative of the officers' testimony.  The video was not cumulative because it was the only evidence that allowed the jury to assess the defendant's appearance and conduct for themselves.  See Commonwealth v. Magri, 462 Mass. 360, 369 (2012) (objects linking defendant to crimes "not cumulative of the Commonwealth's other evidence that the defendant participated in those crimes, which consisted primarily of testimony").  And even were the video cumulative, the judge was within his discretion in admitting it, especially where it did not result in any unfair prejudice to the defendant.  See Commonwealth v. Boyarsky, 452 Mass. 700, 711 (2008) (whether to exclude evidence as cumulative is entrusted to trial judge's discretion).

We also see no abuse of discretion in the judge's denial of the defendant's request for a continuance.  See Commonwealth v. Ray, 467 Mass. 115, 128 (2014).  The defendant argues that a continuance was warranted because it would have allowed him to "enlist experts to scrutinize his physical infirmities to explain [the] officers' observations."  But the defendant does not dispute that the Commonwealth provided the video during discovery, about one and one-half years before trial.  In these

5

circumstances the judge was within his discretion to find that the Commonwealth's use of the video was not, or should not have been, "a surprise" to the defendant.

2. Sufficiency of the evidence. On a sufficiency challenge, "we review the evidence in the light most favorable to the Commonwealth to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), quoting Latimore, 378 Mass. at 677. To sustain an OUI conviction, the Commonwealth must prove three elements beyond a reasonable doubt: (1) operation of a motor vehicle, (2) on a public way, (3) while under the influence of intoxicating liquor. See G. L. c. 90, § 24 (1) (a) (1); Commonwealth v. Palacios, 90 Mass. App. Ct. 722, 728 (2016). Only the third element is at issue. To meet that element, the Commonwealth must prove that "the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely" but "need not prove that the defendant actually drove in an unsafe or erratic manner." Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).

The evidence here was sufficient to establish that the defendant's ability to operate a motor vehicle was impaired by his consumption of alcohol. The officers testified that the defendant smelled of alcohol, was belligerent, had red and

6

glassy eyes and slurred speech, and was swaying and unsteady on his feet.  The defendant also needed three attempts to complete a field sobriety test and admitted to consuming alcohol that night, while giving inconsistent answers about the type and amount of alcohol he consumed.  Based on this evidence, which showed that "the defendant exhibited classic symptoms of alcohol intoxication," rational jurors could have found that the defendant's consumption of alcohol diminished his ability to safely operate a motor vehicle.  Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017).  See Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994) (evidence sufficient to establish diminished capacity to operate where "defendant was belligerent, unsteady on his feet[,] and smelled of alcohol").

Judgment affirmed.

By the Court (Sullivan, Shin & Hodgens, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  March 3, 2023.

---

[1] The panelists are listed in order of seniority.

7