Cowin, J.
The defendant has been indicted for motor vehicle homicide caused by operating under the influence and by operating to endanger under General Laws chapter 90, section 24G(a). A hearing on defendant’s motion to suppress oral statements was held on June 3, 1996, at which one witness, Officer Timothy O’Hara of the Plymouth Police Department, testified.[1]
Based on the testimony of the officer and the reasonable inferences to be drawn therefrom, I make the following findings of fact;
On July 30, 1995 at approximately 6:00 p.m., Officer Timothy O’Hara, a Plymouth police officer for seven years, responded to a radio call to proceed to State Road in Plymouth. On arrival there, the officer saw emergency rescue apparatus and a number of pedestrians. He also observed a female victim lying on the ground being attended to by emergency personnel.
The officer spoke to one Theodore Whitten who was hysterical, crying and upset and had some abrasions. Mr. Whitten indicated that he had been in the back of the truck with the victim and he pointed out the truck in which he and the victim had been riding. As Officer O’Hara walked to that truck, several bystanders pointed to a male subject, Kevin Griffin, the defendant, as the operator of the truck.
Officer O’Hara saw Mr. Griffin standing at the rear of the brown truck that had been pointed out to him. The officer asked Mr. Griffin if the truck were his. Mr. Griffin said that it was his brother’s truck. Officer O’Hara asked the defendant for identification and the defendant produced his license.
By this time, Officer O’Hara had observed that the defendant’s eyes were red, glassy and puffy. The officer had also smelled a strong odor of alcohol emanating from the defendant, and he had observed that the defendant was unsteady on his feet, swaying from side to side. The officer had also noticed that the defendant was having difficulty balancing himself. In fact, he had to lean against the truck to maintain his balance. Office O’Hara at that point told the defendant the signs of alcohol that he had noticed and asked him if he had *452 been drinking. Mr. Griffin replied that he had been drinking, that he had had some beers at Big Island Pond and that he had been out on a boat.
The officer then asked how the accident had happened. Mr. Griffin stated that he had lost control or was speeding coming around the corner; however, he did not know at what speed he was traveling. Officer O’Hara instructed the defendant to perform some field sobriety tests, which he did not pass.
Based upon his opinion that the defendant was intoxicated, the officer told the defendant he was under arrest for operating under the influence of intoxicating liquor. The officer testified that prior to the defendant’s failing the sobriety test, he had not formed an opinion about the defendant’s sobriety and that, until that point, he was investigating the cause of the accident.
DISCUSSION
Miranda warnings are necessary when a person has been taken into custody or deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 444 (1966). “Setting aside obvious cases in which a suspect has been formally arrested,” there is no specific formula for determining whether a person is in custody or his freedom is sufficiently curtailed so as to require Miranda warnings. Commonwealth v. Bryant, 390 Mass. 729, 736 (1984). Inquiry focuses on “(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and, (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the focus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant’s arrest.” Bryant, supra at 737. See also Commonwealth v. Gil, 393 Mass. 204, 212 (1984). “Rarely is any single factor conclusive.” Bryant, supra at 737.
Applying Bryant standards to the facts of this case, I conclude that the defendant should have been given his Miranda warnings at least prior to the time he was asked how the accident happened. By that time, the investigation had certainly begun to focus upon Griffin, as Officer O’Hara knew that Mr. Griffin was the driver of the truck and that Mr. Griffin exhibited all the signs of a person who was under the influence of intoxicating liquor. Once the officer further learned that, in fact, Mr. Griffin had been drinking, it can hardly be said that the defendant was free to leave. This is true, despite the fact that the interrogation appeared to be relatively informal and took place “in the ‘public view’ on the side of the roadway, an atmosphere far less coercive than the station house.” Commonwealth v. D’Agostino, 38 Mass.App.Ct. 206, 208 (1995). Further, the interview terminated with the defendant’s arrest. At least at the point that the officer knew that Griffin was the driver, that he had been drinking and appeared to be under the influence, the questioning had become custodial; that is, the defendant was deprived of his freedom in a significant way. Miranda v. Arizona, supra, at 444 (1966). Cf. Commonwealth v. Doyle, 12 Mass.App.Ct. 786 (1981), and and Commonwealth v. D’Agostino, supra. Indeed, it would have been very poor police procedure for an officer to permit the defendant to leave with knowledge that the defendant had been drinking, was exhibiting all the signs of being intoxicated and that he was the driver of the truck that had been involved in a very serious accident.
ORDER
For the foregoing reasons, the defendant’s motion to suppress is ALLOWED.

Immediately following the hearing, the Court dictated Findings, Rulings and an Order from the bench indicating that a written decision with non-substantive revisions and additional citations would be issued subsequently.