## COMMONWEALTH vs. WALTER G. SAUER.

No. 98-P-1350.

Middlesex. December 15, 1999. - October 24, 2000.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Constitutional Law,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement. *Evidence,* Admissions and confessions. *Search and Seizure,* Protective frisk, Threshold police inquiry. *Controlled Substances.*

A District Court judge correctly concluded that the driver of a motor vehicle, whom the police had a reasonable basis to stop for observed traffic violations, was not in custody when police conducted a threshold inquiry and thus Miranda warnings were not required. [301-302]

At the trial of a complaint alleging possession of a class E substance with intent to distribute and operating a motor vehicle while under the influence of drugs, the evidence was sufficient to warrant the jury's verdicts of guilty. [302-303]

Where, at a criminal trial, the voluntariness of the defendant's statements to police was not in issue, the judge was not required to conduct a voluntariness hearing before admitting the statements in evidence. [303]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on July 1, 1996.

A motion to suppress evidence was heard by *Jonathan Brant,* J., and the case was tried before *Mark S. Coven,* J.

*Kenneth M. Diesenhof* for the defendant.

*Erin Sweeny Larkin,* Assistant District Attorney, for the Commonwealth.

BECK, J. On evidence obtained in a routine traffic stop, the defendant was arrested, charged, and convicted of operating a motor vehicle while under the influence of drugs, operating with a suspended license, and possession of a class E substance with intent to distribute. A marked lane violation was placed on file. On appeal, the defendant claims the motion judge erred in denying his motion to suppress, and the trial judge erred in

denying his motion for a required finding of not guilty. He also claims the trial judge should have held a voluntariness hearing. We affirm.

*Facts.* We address the motion to suppress first, setting out the facts as the motion judge found them. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990).

Shortly after midnight on June 29, 1996, John Crowley and another Cambridge police officer were working undercover in the area of Windsor and Hampshire Streets in Cambridge. Crowley saw the defendant bring his car to a screeching stop near a bar called the Windsor Tap. The defendant ran across the street into the bar, returned a short time later, and drove off very quickly. Crowley followed the defendant in his unmarked police car. The defendant's driving was erratic; he repeatedly crossed the center line and swerved into oncoming traffic. Eventually Crowley stopped the defendant and asked to see his license and registration. Smelling an odor of alcoholic beverages on the defendant's breath, Crowley asked the defendant whether he had been drinking. The defendant responded that he had "had a few." Crowley noticed some strange behavior (not detailed at the motion to suppress hearing but described more fully at trial). Crowley "thought Defendant might have been under the influence of some type of narcotic drug." We infer from later events that the license the defendant produced was in the name of Walter G. Sauer.

Crowley asked the defendant to get out of the car. As he did so, the defendant kept his hands in his pockets. Crowley asked "What are you doing?" The "[d]efendant replied by taking his hands out of his pockets and extending a closed fist toward . . . Crowley and stating, 'It's just sleeping pills.' " In response to Crowley's query as to what the defendant meant, the defendant opened his hand, revealing a fistful of pills which the defendant identified as "Soma." The officer then patted down the defendant and found additional pills. Crowley next asked the defendant whether he had a prescription for the pills. The defendant produced "two papers" with the name "William Lyons" on them. In response to Crowley's question about the identity of William Lyons, the defendant responded that he had obtained percocet under the name of William Lyons. Upon inquiry, the defendant said he had taken five percocets about an hour before. (From the trial transcript we learn that one of the documents was a prescription for five percocets. The defendant

said he had taken all five a few hours before, so that there were none left at the time of the stop.) The defendant was then arrested.

*Discussion.* 1. *Custodial interrogation.* On appeal, the defendant claims, as he apparently did before the motion judge, that he was in custody at the time the police questioned him about the pills. He therefore argues that any statement he made and any physical evidence obtained should be suppressed because they were obtained in violation of *Miranda* v. *Arizona,* 384 U.S. 436 (1966). However, even the defendant's analysis makes clear that there was no custodial interrogation here. See *Commonwealth* v. *D'Agostino,* 38 Mass. App. Ct. 206, 208, *S.C.,* 421 Mass. 281 (1995).

Having observed the traffic violations, the police had a reasonable basis for stopping the defendant. *Whren* v. *United States,* 517 U.S. 806, 810 (1996). The defendant was not in custody at the time of the stop. *Berkemer* v. *McCarty,* 468 U.S. 420, 440 (1984). The question about whether the defendant had been drinking "constituted '[g]eneral on-the-scene questioning' . . . and did not require the officer to administer Miranda warnings." *Commonwealth* v. *D'Agostino,* 38 Mass. App. Ct. at 208, quoting from *Commonwealth* v. *McNelley,* 28 Mass. App. Ct. 985, 986 (1990). Nor did the inquiry related to the defendant's having his hands in his pockets render the encounter custodial. Hence the defendant's statement about the pills was not obtained in violation of *Miranda* v. *Arizona.* See *Commonwealth* v. *Claiborne,* 423 Mass. 275, 281 (1996); *Commonwealth* v. *McNelley, supra* at 986 ("[t]hat a response to an on-the-scene question constitutes an admission does not transform the character of the interview into a custodial interrogation").

The motion judge found that Crowley's subsequent pat-down of the defendant was a "valid initial pat down[] for weapons." The defendant does not challenge this finding. See *Commonwealth* v. *Johnson,* 413 Mass. 598, 600 (1992) ("[i]f the stop was justified, the officers could take reasonable precautions for their own protection").

Crowley's inquiry about a prescription and the defendant's answer were a continuation of the initial fact-finding process. See *Commonwealth* v. *McNelley,* 28 Mass. App. Ct. at 986. Had the defendant had a proper prescription, his possession of the pills would have been lawful. Once the defendant produced the "papers," Crowley could well have been trying to determine

the defendant's identity since the name on the papers was different from the name on the defendant's license. See *Berkemer* v. *McCarty*, 468 U.S. at 439 (in *Terry* stop officer "may ask the detainee a moderate number of questions to determine his identity"). Thus, in regard to the possession of the pills, this was a standard threshold inquiry. The subsequent question as to whether the defendant had taken any of the percocets is, we think, the narcotics equivalent of asking someone stopped in similar circumstances whether he has been drinking. See *Commonwealth* v. *Cameron*, 44 Mass. App. Ct. 912, 914 (1998). It was therefore part of an attempt to determine whether a crime had been committed, and if so, the nature of the offense. *Id.* at 913-914 & n.2.

Although the script was neither that of the classical stop for drunk driving nor that of one for drug distribution, it was well within the constitutional limits governing such encounters. It took place on a public street; there was a passenger in the defendant's car and the two officers were in plain clothes. It was also brief and was "substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda." *Berkemer* v. *McCarty*, 468 U.S. at 439. See *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. at 986; *Commonwealth* v. *D'Agostino*, 38 Mass. App. Ct. at 208.

2. *Motion for required finding.* a. After the defendant was arrested, the police searched his car and found twenty-four bank envelopes in the middle of the front seats. One of the envelopes contained a pill identical to those the defendant had in his pocket. The pills were carisprodol, a Class E substance. The Commonwealth charged the defendant with possession with intent to distribute. The defendant claims there was insufficient evidence to prove beyond a reasonable doubt that the pills were for anything other than personal use. We disagree. The police officers testified that based on their training and experience, including hundreds of drug arrests, they had seen drugs packaged for distribution in envelopes. The defendant's possession of thirty-one loose pills in his pocket is at best an uncommon way to carry pills for personal use. The presence of one bank envelope with a pill identical to the other thirty-one is more than sufficient to support an inference that the defendant intended to place the rest of the pills in the remaining bank envelopes for distribution. Compare *Commonwealth* v. *Clermy*, 421 Mass. 325, 330-331 (1995); *Commonwealth* v. *Pena*, 40 Mass. App. Ct. 905, 905-906 (1996).

b. The defendant also claims there was insufficient evidence to support the conviction of operating under the influence of drugs. Even were we to consider this argument, despite the lack of legal citation to support it, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), it is unpersuasive. The evidence before the jury included the defendant's hasty visit to the Windsor Bar, which was frequented by drug users and drug dealers; the defendant's erratic driving; and a description of the defendant as "lethargic . . . slow to respond . . . eyes . . . very dilated. . . . His pupils were just enormous and he . . . had [a] . . . glazed look." When he got out of the car, he was slow and unsteady. That evidence, combined with the defendant's admission that he had recently taken five percocets, and the page of the Physicians Desk Reference discussing the characteristics of percocet, adequately supported the jury's verdict.

3. *Voluntariness.* The defendant claims that the trial judge was required to conduct a voluntariness hearing before admitting evidence of the defendant's statements. He made no such request. In the absence of a request, the judge must provide such a hearing only where there is a substantial claim of involuntariness, which was not the case here. *Commonwealth* v. *Murphy*, 426 Mass. 395, 398 (1998).

*Judgments affirmed.*